UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ANTHONY ALBERT MERRETT,

    Plaintiff,

v.                                      Case No.3:10-cv-1195-J-12MCR

LIBERTY MUTUAL INSURANCE
COMPANY, etc.,

    Defendant.[1]

## ORDER

This cause is before the Court on Defendant Liberty Mutual Insurance Company's ("Defendant Liberty Mutual") motion for summary judgment (Doc. 110), along with submissions in support (Docs. 114, 115, 123, 124, 126, 127, and 129), and Plaintiff Anthony Albert Merrett's ("Plaintiff Merrett") memorandum in opposition thereto (Doc. 119), with accompanying submissions. The Court held a hearing on the motion for summary judgment on December 19, 2012.[2] For the reasons set forth below, the Court finds that disputed issues of material fact preclude summary judgment for Defendant Liberty Mutual.

---

[1] Despite the fact that documents submitted by both parties continue to refer to three (3) plaintiffs, there is only one plaintiff remaining in this case. Former Plaintiffs Haley MacKenzie Bamping and Audrey Elzey Franklin were dismissed when the Court found that they had assigned any claims they had against Defendant Mutual Liberty Insurance Company arising out of its handling of the insurance claim for the automobile accident at issue to Plaintiff Anthony Albert Merrett. See Doc. 75. Another party, Defendant Liberty Mutual Insurance Company's agent, former Defendant Crawford & Co., also was dismissed from this action. See Doc. 96.

[2] Because of illness, the undersigned has temporarily taken over this case for The Honorable Howell W. Melton, Senior United States District Judge. I have read the transcript of that hearing (Doc. 130), in addition to the case file.

**Factual Background**

This case arises out of an automobile accident that occurred on March 10, 2009. Plaintiff Merrett was injured by a car driven by Haley MacKenzie Bamping ("Bamping"), causing him to lose part of his right leg. Plaintiff Merrett sued Bamping, and two owners of the vehicle, Bamping's grandmother Audrey Elzey Franklin (Franklin) and their family company, Legacy Construction of Jax., Inc., in state court. Only Bamping and Franklin were insured by Defendant Liberty Mutual. That lawsuit was settled and a consent judgment entered for $3.25 million for Plaintiff Merrett and against Bamping, Franklin, and Legacy Construction of Jax., Inc. See Doc. 1-2 at 13-20, and Doc. 18-1. As part of the settlement agreement, Bamping and Franklin assigned to Plaintiff Merrett any claims they may have had against Defendant Liberty Mutual arising from its handling of Plaintiff Merrett's insurance claim. See Doc. 1-2 at 13-20, and Doc. 75.

The case before the Court raises issues related Defendant Liberty Mutual's attempt to settle Plaintiff Merrett's claim for insurance proceeds and to obtain a release from further liability for its insureds Bamping and Franklin, by tendering a check for the $50,000 bodily injury policy limits to him. Plaintiffs' Second Amended Complaint (Doc. 76) asserts three causes of action. Count I asserts a claim of bad faith against Defendant Liberty Mutual in its handling of the adjustment and defense of Plaintiff Merrett's insurance claim on behalf of its insureds Bamping and Frankin ("bad faith claim"). Count II asserts that Defendant Liberty Mutual breached the contract of insurance which required it to pay damages as a result of the bodily injury resulting to Plaintiff Merrett ("breach of contract claim"). Count III maintains that Defendant Liberty Mutual breached its fiduciary duty to its insureds

2

Bamping and Franklin in its handling of Plaintiff Merrett's insurance claim ("breach of fiduciary duty claim").

Defendant Liberty Mutual seeks summary judgment as to all three claims. The Court first sets out the standard of review and relevant law, then addresses the merits of the motion for summary judgment.

### Standard of Review and Relevant Law

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Thus, credibility issues may not be resolved by the Court on a motion for summary judgment. The purpose of summary judgment is to dispose of unsupported claims or defenses which, as a matter of law, do not raise issues of material fact suitable for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

In determining whether the movant is entitled to summary judgment, the Court must view all the evidence and factual inferences reasonably drawn from the evidence in the light most favorable to the non-moving party, and must resolve all reasonable doubts in favor of the non-movant. See Matsuhita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The moving party bears the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. See Id.

Florida Statutes, § 624.155(1)(b)(1) permits an insured to bring a civil action against an insurer the insured alleges did not attempt in good faith to settle a claim, "when, under all the circumstances, it could and should have done so, had it acted fairly and honestly towards its insured with due regard for her or his interests." If it fails to exercise good faith toward its insured, the insurer is liable to "pay the entire judgment entered against the insured in favor of the injured third party, including any amount in excess of the insured's policy limits." State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So.2d 55, 58 (Fla. 1995).

"[W]hen an insurer is handling claims against its insured, it has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." Perera v. U.S. Fid. & Guar. Co., 35 So.3d 893, 898 (Fla. 2010) (quoting Berges v. Infinity Ins. Co., 896 So.2d 665, 668 (Fla. 2004)).

> An insurer, in handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business. For when the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement, then the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured.... The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so. Because the duty of good faith involves diligence and care in the investigation and evaluation of the claim against the insured, negligence is relevant to the question of good faith.

Boston Old Colony Ins. Co. v. Gutierrez, 386 So.2d 783, 785 (Fla. 1980)(citations omitted). Whether an insurer has acted in bad faith in handling a claim against its insured is determined by examining the totality of the circumstances. Berges, 896 So.2d at 680.

The reasonable diligence and care material to determining bad faith, traditionally, are considerations of fact, not of law. See Campbell v. Gov't Employees. Ins. Co., 306 So.2d 525, 530-31 (Fla. 1974).

"An insurer acting with diligence and due regard for its insured must be allowed a reasonable time to investigate a claim; no obligation exists to accept a settlement offer (or to tender policy limits in advance of a settlement offer) without time for investigation." Johnson v. Geico Gen. Ins. Co., 318 F. App'x 847, 851 (11th Cir.2009) (unpublished). This means that an insurer should take a reasonable amount of time to properly investigate a claim before engaging in settlement negotiations.

However, it also is true that "[w]here liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations." Powell v. Prudential Prop. & Cas. Ins. Co., 584 So.2d 12, 14 (Fla. 3d DCA 1991). "Bad faith may be inferred from a delay in settlement negotiations which is willful and without reasonable cause." Id. So in a case involving a catastrophic claim with clear liability and insufficient policy limits, the existence of bad faith must be determined on a case by case basis in part by balancing the insurer's duty to act promptly to negotiate a settlement in order to protect its insured from exposure to liability for excess judgments with its duty to take the time needed to properly investigate the claim before attempting to settle it.

Courts also have clarified that bad faith is distinct from ordinary negligence in that "[t]he essence of an insurance bad faith claim is that the insurer acted in its own best interests, failed to properly and promptly defend the claim, and thereby exposed the insured to an excess judgment." Maldonado v. First Liberty Ins. Corp., 546 F.Supp.2d

1347, 1353 (S.D.Fla. 2008). See, also, Campbell, 306 So.2d at 530-31. "Thus, insurers have a positive duty to handle claims in a way that protects the interests of their insured, but they are not required to handle them perfectly, nor must they act without having had sufficient time to process and investigate a claim." Novoa v. GEICO, No. 12-80223-CV, 2013 WL 172913 at *4 (S.D.Fla. January 16, 2013)(unpublished). Whether an insurer acted in bad faith in failing to settle a claim, exposing its insured to an excess judgment, is a jury question in the case where there are disputed issues of fact and credibility issues to be resolved. See, e.g., Goheagan v. American Vehicle Ins. Co., No. 4D10-3781, 2012 WL 60278095 at *5 (Fla. 4th D.C.A., December 5, 2012). As the Court will discuss below, the determination of whether Defendant Liberty Mutual's conduct in this case constitutes bad faith clearly involves disputed issues of fact requiring resolution of credibility issues.

**Analysis**

Defendant Liberty Mutual argues that as a matter of law, no reasonable jury could conclude that its efforts to settle Plaintiff Merrett's insurance claim against its insureds Bamping and Franklin constituted bad faith, pointing to several facts it claims are undisputed in the record. First, because Plaintiff Merrett's insurance claim involved catastrophic injury, clear liability on the part of its insureds, and insufficient policy limits, it had a duty to promptly initiate settlement discussions in order to protect its insureds from liability for an excess judgment. See Powell, 584 So.2d at 14. It asserts that it fulfilled that duty by tendering a check to Plaintiff Merrett for the $50,000 bodily injury policy limits two (2) weeks after the accident.

While acknowledging some issues with the tender of the check, Defendant Liberty

Mutual maintains that as a matter of law, its actions cannot constitute bad faith. It argues that its adjuster merely delivered the check for the policy limits to Plaintiff Merrett in good faith, did not attempt to negotiate a settlement, and any alleged ethical violations during that encounter were mere technical ones which do not establish bad faith.

Defendant Liberty Mutual addresses two other issues with respect to its tender of the check. First, it maintains that a reference on the settlement check, and in a proposed release which was mailed separately to Plaintiff Merrett, to the release from liability of Legacy Construction of Jax., Inc., who was not its insured, resulted because it still was gathering information about the claim and available insurance coverage. Second, it asserts that the inclusion of Shands Hospital as a co-payee on the check was required by law because Shands Hospital had filed a lien in the public record. Defendant Liberty Mutual's position is that such imperfect tender does not constitute bad faith as a matter of law in the circumstances of this case.

Defendant Liberty Mutual also contends that Plaintiff Merrett did not advise it about any issues he had with the tender of the check or otherwise give Defendant Liberty Mutual an opportunity to remedy any problems. It posits this is so because after Plaintiff Merrett initially refused to accept the check and later obtained counsel, he opted instead to seek a state court judgment as to his damages and then to pursue his claim for bad faith in a legal strategy to avoid the $50,000 policy limits and recover the excess judgment from Defendant. Finally, Defendant Liberty Mutual maintains that the record demonstrates that at no point after the accident was Plaintiff Merrett willing to settle the claim for the policy limits, so its actions did not result in the excess judgment against its insureds Bamping and Franklin, and so it cannot be found to have acted in bad faith.

7

Plaintiff Merrett recognizes Defendant Liberty Mutual's duty under the applicable law to act promptly in attempting to settle his claim to protect its insureds, but points to several facts in the record which could support a jury finding that it acted in bad faith. First, Defendant Liberty Mutual's adjuster delivered the settlement check to Plaintiff Merrett's hospital room, without any prior notice, while Plaintiff Merrett was under the influence of medication and struggling to cope with the loss of his leg. When he declined to accept the check, the adjuster allegedly advised Plaintiff Merrett that he could not take the check back and simply left it there. Plaintiff Merrett has provided expert testimony to support his position that these actions violate several statutory ethical rules applicable to insurance adjusters and demonstrate Defendant Liberty Mutual's bad faith in its attempt to settle the claim.

Plaintiff Merrett also points out that the check, as well as a proposed release that was mailed to him separately, refer to the purported release of Legacy Construction of Jax., Inc., a party not insured by Defendant Liberty Mutual, from liability for the accident. He points to evidence in the record to establish that Defendant Liberty Mutual knew it did not insure Legacy Construction of Jax., Inc. when it issued the check.

Moreover, Plaintiff Merrett points out that the check was made out to co-payee Shands Hospital, which had filed a lien in the public record, rendering it non-negotiable. Plaintiff Merrett has proffered evidence to support the conclusion that Defendant Liberty Mutual knew at the time the check was issued that worker's compensation insurance was involved in the case which would nullify any lien filed by Shands Hospital under applicable law, therefore, Shands Hospital was not a proper party for inclusion on the check from the date if its issuance.

Finally, Plaintiff Merrett claims that these issues with the tender of the check raised concerns in his mind and in the minds of attorneys with whom he consulted, resulting in a lack of trust in dealing with Defendant Liberty Mutual to resolve issues with the check. He argues it was this mistrust sown by its conduct, and not his unwillingness to settle or pursuit of any legal strategy to avoid the insurance policy limits, that resulted ultimately in the filing of the lawsuit in state court and obtaining the excess judgment against the insureds Bamping and Franklin.

"[T]he ultimate tender of the policy limits does not automatically insulate an insurer from liability for bad faith." Powell, 584 So.2d at 15 (citations omitted). Whether Defendant Liberty Mutual's conduct in attempting to tender the policy limits foreclosed settlement negotiations and prevented Plaintiff Merrett from accepting the policy limits and agreeing to release Bamping and Franklin from further liability is a relevant and material fact in dispute in this case. The parties contest numerous facts in this case, which will require assessment of the credibility of witnesses to resolve, as well as appropriate inferences which may be drawn from some of the facts. Defendant Liberty Mutual simply has not established that no reasonable jury could find for Plaintiff Merrett on the record. Accordingly, the Court finds it is not entitled to summary judgment as to the bad faith claim.

With regard to Plaintiff's claims for breach of contract and breach of fiduciary duty, the Court previously ruled that neither claim warranted dismissal as duplicative. See Order, Doc. 88. Defendant Liberty Mutual has submitted the opinion in Government Employees Ins. Co. v. Prushansky, No. 12-80556-CIV, 1012 WL 6201220 (S.D.Fla., December 7, 2012) as supplemental authority in support of its position that Plaintiff Merrett's claims for breach of contract and breach of fiduciary duty are subsumed in his

bad faith claim. It also argues it would be entitled to summary judgment on the merits of those claims for the same reasons it asserts it is entitled to summary judgment on the bad faith claim.

The Court is not persuaded to change its previous ruling that neither the breach of contract claim nor the breach of fiduciary duty claim is unnecessarily duplicative of and subsumed by the bad faith claim based on the supplemental authority submitted. While the Prushansky opinion is cogent and on point, it primarily relies on Florida cases that do not address the specific issue of what impact the statutory bad faith cause of action has on causes of action for breach of contract and breach of fiduciary duty. Absent clearer indication from Florida courts on this issue, the Court finds no basis to reverse its previous ruling that Plaintiff Merrett's claims for breach of contract and breach of fiduciary duty are not due to be dismissed as a matter of law. In addition, for the reasons set forth above, the Court also finds that questions of material fact remain to be determined which preclude summary judgment on behalf of Defendant as to these two causes of action.

Upon review of the matter, it is

**ORDERED AND ADJUDGED:**

1) That Liberty Mutual's Motion for Summary Judgment (Doc. 110) is denied; and

2) That by no later than April 10, 2013, the parties shall confer and advise the Court by filing a joint written notice whether they wish to undertake further settlement efforts or whether the case is ready to be set for a final pre-trial conference and trial.

**DONE AND ORDERED** this \_\_27th\_\_\_ day of March 2013.

_____
HARVEY E. SCHLESINGER
United States District Judge

Copies to Counsel of Record:

Chad S. Roberts, Esq., Counsel for Plaintiff
John S. Fagan, Esq., Counsel for Plaintiff
Matthew W. Spohrer, Esq., Counsel for Plaintiff
Robert F. Spohrer. Esq., Counsel for Plaintiff
John Stewart Mills, Esq., Counsel for Plaintiff
Gary J. Guzzi, Esq., Counsel for Defendant
Gideon Reitblat, Esq., Counsel for Defendant
Mark S. Shapiro, Esq., Counsel for Defendant
Miguel Angel Gonzalez, Esq., Counsel for Defendant
Nina Sue Whiston, Esq., Counsel for Defendant
David R. Drill, Esq., Interested Party